## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INVITAE CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 21-669-LPS |
| | : | |
| NATERA, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| FUTURE LINK SYSTEMS, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 21-634-LPS |
| | : | |
| AMLOGIC HOLDINGS, LTD., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| CONSUMERON, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 21-1147-LPS |
| | : | |
| MAPLEBEAR INC., | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM ORDER

At Wilmington this **29th** day of **November 2021**:

WHEREAS, Defendants in the above-listed cases filed Rule 12(b)(6) motions to dispose of patent infringement claims on the bases that certain patent claims are invalid under 35 U.S.C. § 101, because they are allegedly directed to patent ineligible subject matter;

1

WHEREAS, the above-listed cases brought by Invitae Corporation ("Invitae"), Future Link Systems, LLC ("Future Link"), and Consumeron, LLC ("Consumeron") are unrelated to each other;

WHEREAS, the Court heard oral argument in all the above-listed cases on November 22, 2021, and has considered the parties' respective briefs and related filings;

WHEREAS, the Court continues to find that its procedure of addressing multiple Section 101 motions from separate cases in one hearing is an efficient use of judicial resources and a beneficial tool for resolving the merits of Section 101 motions;

**NOW, THEREFORE, IT IS HEREBY ORDERED** that, with respect to the above-listed Invitae case, Defendant's motion (C.A. No. 21-669 D.I. 8) is **DENIED**;

**IT IS FURTHER ORDERED** that, with respect to the above-listed Future Link case, Defendant's motion (C.A. No. 21-634 D.I. 8) is **DENIED WITHOUT PREJUDICE**; and

**IT IS FURTHER ORDERED** that, with respect to the above-listed Consumeron case, Defendant's Rule 12 motion (C.A. No. 21-1147 D.I. 9) is **DENIED WITHOUT PREJUDICE**.

The Court's Order is consistent with the bench ruling announced at the conclusion of the hearing on November 22, 2021, pertinent excerpts of which follow:[1]

All the motions, of course, present Section 101 patent eligibility issues arising under motions to dismiss governed by Federal Rule of Civil Procedure 12(b)(6).

I applied the well-known standards applicable to Rule 12(b)(6) motions, which [were] not disputed in any of the cases argued today. I also applied the familiar two-step framework for patent eligibility under 35 U.S.C. § 101, as set out by the Supreme Court in *Alice*.[2]

At Step One, I determine if a claim is directed to a patent ineligible subject matter. In particular, I determine if the claim is directed to one of the patent ineligible

---

[1] The Court adopts the full bench ruling.

[2] *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014).

concepts[:] a law of nature, a natural phenomenon, or an abstract idea.

If the claim is not directed to one of those patent ineligible concepts, then the motion is denied. If, however, the claim is directed to a patent ineligible concept, then at Step Two, the Court looks for an element or combination of elements that is sufficient to ensure that the claim in practice amounts to significantly more than a claim upon the ineligible concept itself. In other words, the Court looks at Step Two for an inventive concept.

If, but only if, the defendant prevails at both Steps One and Two, the Court may declare the claim ineligible for patenting and dismiss the patent infringement cause of action.

As further support for the legal standards, I hereby incorporate by reference the legal standards for Section 101 motions and motions to dismiss as outlined in the Federal Circuit's recent decision in *CosmoKey Solutions v. Duo Security*.[3]

With that background, let me turn to the cases. I'll discuss them in the order that they were argued this morning.

So first up is *Invitae v. Natera*.

In this case, Invitae asserts that Natera infringes at least Claim 1 of U.S. Patent No. 10,604,799, the '799 patent. I understand Natera's motion to be challenging the eligibility of all 16 claims of the '799 patent. For reasons that I will explain, Natera's motion to dismiss is denied.

I start by noting that although each patent claim is presumptively valid, a District Court may analyze representative claims for patent eligibility where all of the asserted and challenged claims are substantially similar and linked to the same purported abstract idea. We get that concept from among other places the *Content Extraction* decision,[4] as well as *Cleveland Clinic Foundation v. True Health Diagnostics*.[5]

Here, Natera contends that Claim 1 of the '799 patent is representative. In the complaint, Invitae indicated that Claim 1 is representative generally. And in its brief on the motion to dismiss, Invitae continued to refer to Claim 1 as representative and did not raise any issue with Natera's contention regarding Claim

---

[3] *CosmoKey Sols. GmbH & Co. KG v. Duo Security LLC*, 15 F.4th 1091 (Fed. Cir. 2021).

[4] *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

[5] *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017).

1 being representative.

Then[,] however, when we got to the post-briefing checklist letter, for the first time Invitae contended that Claims 1, 5, 8, and 9 must all be considered in order to fully represent all 16 asserted claims.

In my view, this contention comes too late, so I will consider only Claim 1 and I view it as representative of all 16 claims.  Now, of course, given my decision to deny the motion, Invitae can hardly complain that there is any unfairness in me denying the motion in full based only on considering one patent claim.

With respect to claim construction, the Court agrees with Natera that no claim construction is necessary before deciding the motion to dismiss.

So let me turn now to application of the two-part *Alice* test.

At Step One, the Court must analyze the focus of the claim, that is its character as a whole and especially its purported claimed advance.  And those concepts are found, among other places, in *SAP v. Investpic*,[6] and *Finjan v. Blue Coat*.[7]

Natera argues that Claim 1 of the '799 patent is directed to the abstract idea of "an algorithmic method of manipulating and combining genetic sequence data using an [intermediate] data set."[8]  What Natera has stated is, in fact, an abstract idea.  The Federal Circuit has found patents claiming algorithmic transformation or combination of data into a new form to be directed to an abstract idea.  Among other places, we see that in *RecogniCorp v. Nintendo*,[9] as well as *Digitech*.[10]  So [what] Natera has stated . . . is an abstract idea.

However, I do not agree with Natera that Claim 1 is directed to this abstract idea.  Instead, I find that Claim 1 is directed to a specific solution to a technological problem in the field of sequence assembly.  The claimed process enables the identification of mutations with positional accuracy in a computationally tractable manner.

So I agree with Invitae that Claim 1 is directed to a "technological solution to the

---

[6] *SAP Am., Inc. v. InvestPic LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018).

[7] *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018).

[8] D.I. 9 at 1, 6.

[9] *RecogniCorp LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).

[10] *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014).

technological problem of how to better assemble DNA sequences [. . .] in a more computationally efficient and overall improved way."[11]  I have some ellipses in there but all of what I said is a quote from the plaintiff.

The specification of the '799 patent discloses technological problems in the field of sequence assembly[,] including that where assembly provides accurate detection of [variants], the prior art assembly technique was often computationally intractable for high throughput data analysis.[12]

By contrast, as the patent further states, [i]n the claimed process, ["]the need to compare each of the reads to all of the other reads is avoided, providing computational[] tractability even for very high throughput analyses."[13]

Hence, as I have already said, the claimed process provides solutions to technical problems in the prior art.

In my view, then, Claim 1 is analogous to claims the Federal Circuit found to be patent eligible in *McRO*.[14]  The claims there were ["]limited to rules with specific characteristics["] that allow[ed] ["]computers to produce accurate and realistic lip synchronization and facial expressions in animated characters.["15]

The claims in *McRO* went ["]beyond merely organizing existing information into a new form["] and additionally used ["]a combined order of specific rules that render[ed] information into a specific format that [was] then used and applied to create desired results: a sequence of synchronized, animated characters.["16]

Similar to this, here, Claim 1 sets forth ["]a set of concrete steps specific to the [']contig[' ]based assembly of DNA sequences to solve the technological problem of improved sequence assembly for better mutation detection.["17]  That is essentially a quote from . . . one of the briefs, and I agree with it.

I am not persuaded by Natera's analogy to the claims at issue in *In re Board of*

---

[11] D.I. 13 at 1.

[12] '799 patent at 2:1-6.

[13] *Id.* at 2:41-43.

[14] *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016).

[15] *Id.* at 1313 (internal citation and quotation marks omitted).

[16] *Id.* at 1315 (internal citation and quotation marks omitted).

[17] D.I. 13 at 8.

*Trustees of Leland Stanford Junior University*.[18]

In *Stanford*, the claims were drawn to a ["]computerized method of inferring haplotype phase in a collection of unrelated individuals."[19]  The claimed method in *Stanford* invoked [mathematical] techniques but ["]recit[ed] no application, concrete other otherwise, beyond storing the haplotype phase."[20]

By contrast, here, Claim 1 not only recites an algorithmic method of manipulating and combining genetic sequence data, it also recites the application of the method "to map positional information of mutations found in the individual reads relative to the reference."[21]  That's from . . . the last part of Claim 1.

Thus, contrary to Natera's suggestion, *Stanford* does not hold that claims drawn to new and improved computerized methods of analyzing genetic data can never be patent eligible.  Instead, where, as here, the claims recite applying the new and improved computerized methods to practical technological improvements, such claims may be[,] and here are[,] patent eligible.

When Natera says that the claims before me are directed to just a mathematical result or simply involve using computers as tools rather than any improvement in computers or other technology, I disagree.

Natera also argues that the Court should not be giving credit to Claim 1 for solving the computational tractability problem.  Natera's position is unpersuasive.

Even though Claim 1 does not expressly recite the concept of computational tractability, all the algorithmic steps that render sequence assembly of high throughput data computationally tractable are recited in the claim, which is sufficient for purposes of the pending motion.  We know from cases like *Uniloc*,[22] as well as . . . last week's decision *Mentone Solutions LLC v. Digi International Inc.*,[23] . . . that the claims themselves do not need to necessarily articulate the advantages of the claimed combinations or of the invention in order to be patent eligible.

---

[18] *In re Bd. of Trs. of Leland Stanford Junior Univ.*, 991 F.3d 1245 (Fed. Cir. 2021).

[19] *Id.* at 1250.

[20] *Id.*

[21] '799 patent, cl. 1.

[22] *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1309 (Fed. Cir. 2020).

[23] *Mentone Sols. LLC v. Digi Int'l Inc.*, 2021 WL 5291802, at *5 (Fed. Cir. Nov. 15, 2021).

Moreover, as the specification of the patent[-]in[-]suit here explains, sequencing and genotype analyses on high throughput data ["]were previously computationally intractable.["][24]   That's stated explicitly [in the patent].  But now, in light of the invention, [they] can be performed using existing computers that apply the claimed process.  Thus, just like in *McRO*, "[i]t is the incorporation of the claimed rules, not the use of the computer, that improved the existing technological process."[25]

So . . . the defendant has failed at Step One.  Therefore, there is no need for me to move on to Step Two, and I will not proceed to Step Two.

So for all those reasons, Natera's motion is denied.

Let me next turn to the second case that was argued, *Future Link v. Amlogic*.

Future Link asserts that at least Claim 1 of U.S. Patent No. 7,917,680 is infringed by Amlogic.

The parties assume that Amlogic's Rule 12(b)(6) motion to dismiss implicates all 20 claims of the '680 patent, and the Court makes this assumption as well.  So my decision today applies to all of the patent[] claims.

The parties agree that no claim construction is necessary before I rule on patent eligibility.

The parties . . . disagree on whether Claim 1 of the '680 patent is representative of all 20 claims in the patent.  I tend to agree with Amlogic that Claim 1 is representative[,] but given how I'm resolving this motion, I need not actually decide the dispute over representativeness.

This is because, for reasons that I will explain, Amlogic's motion to dismiss will be denied without prejudice to renew at the case dispositive motion stage.  Because I am denying the motion, it is fair to both parties that I analyze only Claim 1, which is what Amlogic has encouraged me to do.

At Step One, the parties emphasize different lines of Federal Circuit cases.  Amlogic argues that the claims of the '680 patent are directed to the abstract idea of organizing, generating, and transmitting data or, alternatively, organizing and transmitting information according to a set of rules.

---

[24] '799 patent at 4:50-51.

[25] *McRO*, 837 F.3d at 1314 (internal citation and quotation marks omitted).

If Amlogic is right that the claims are directed merely to manipulation of data, then the claims are directed to an abstract idea. We know that from many cases, including *Digitech Image*[26] and] *Electric Power Group*.[27]

Amlogic also contends that the '680 claims use result-based functional language that does not explain how to accomplish the desired results. If this is true, this may well be a clue that the claims are directed to an abstract idea. We know that from, among other places, *Two-Way Media*.[28]

Amlogic also analogizes practice of the claims before me to real world situations prior to the Internet. For instance, post office workers sorting and delivering mail. We know from cases like *Intellectual Ventures v. Symantec*[29] . . . that that type of real world analogy, if apt, may be another clue that the claims are directed to an abstract idea.

For its part, on the other hand, Future Link argues that the inventions in the '680 patent meet a challenge unique to computer networks.

If Future Link is correct, we know that claims that are directed to a specific improvement in computer technology and are not merely directed to use of computers as tools . . . are not abstract and therefore are patent eligible. We know that from many cases, including *Visual Memory*.[30]

Given my analysis of Step Two, which I will turn to in a moment, I need not and do not decide today which party is correct at Step One. Instead, I will assume, without deciding, that Amlogic is correct that the '680 claims are directed to the abstract idea Amlogic has articulated.

Even granting Amlogic that assumption, Amlogic has failed to persuade the Court that it should grant the pending motion for reasons I'll discuss in a moment at Step Two.

---

[26] *Digitech*, 758 F.3d 1344.

[27] *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016).

[28] *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329 (Fed. Cir. 2017).

[29] *Intell. Ventures I, LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016).

[30] *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017).

The Federal Circuit has employed a similar approach and resolved 101 issues at Step Two in several of its cases, most recently *CosmoKey*[31] as well as *Amdocs*.[32]

And with some frequency, District Courts have done the same thing.

For instance, the Southern District of New York stated in *Personalized Media Communications LLC v. Netflix Inc.*, "[a]lthough courts ordinarily resolve step one before proceeding to step two, it is within a court's discretion to skip straight to step two.  In doing so, the court must still consider step one issues to the extent that they bear on the step two analysis."[33] . . .

The *Personalized Media* court cited numerous . . . District Court cases that have done this. . . .  I agree with the *Personalized Media* court . . . .

So let me turn to Step Two.

At Step Two, I begin with the premise that the Federal Circuit announced in *Aatrix*, "[w]hile the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination."[34]

Further, as the Court stated in *Berkheimer*, "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact."[35]

Here, I agree with Future Link.  There is at least a fact dispute as to whether the '680 patent's combination of protocol[] compliance rules[] and performance-based rules, which is the patent's alleged inventive concept, . . . was conventional, well understood and routine at the pertinent date.

Notably, the specification explains that this combination of protocol[] compliance rules[] and performance-based rules is the key aspect of the claimed invention for reasons including that this combination helps to reduce or eliminate data collisions between channels.

---

[31] *CosmoKey*, 15 F.4th 1091.

[32] *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288 (Fed. Cir. 2016).

[33] *Personalized Media Commc'ns LLC vs. Netflix Inc.*, 475 F. Supp. 3d 289, 298 (S.D.N.Y. 2020).

[34] *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).

[35] *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

Amlogic did not address the combination of protocol compliance rules and performance-based rules in its opening brief.

Then in its reply brief, Amlogic's only rebuttal was to express doubt [as to whether] "prior to the '680 patent, performance-based and protocol-based packet ordering techniques had never been combined to improve communications speed between computer components."[36] . . .

But Amlogic's argument only serves to illustrate the material fact dispute revealed by the minimal record at this stage of the case. On a motion to dismiss, of course, I cannot resolve such a factual question in Amlogic's favor.

Today, Amlogic asserted there is a deficiency in the claims that cannot be fixed by any factual presentation or the resolution of any fact disputes. In making this argument, I think Amlogic is simply reiterating its Step One contention that the claims contain only generic functional language and result[-]based claiming without the required detail as to how the purported technological solution is accomplished.

I have assumed without deciding that Amlogic has the better of the arguments at Step One, but even making that assumption[,] I see no basis in either the claims or in the law to further conclude that the fact dispute I have identified at Step Two would be immaterial to the issue of patent eligibility. In other words, I cannot today conclude that the claims are so deficient that I must, today, find them to be ineligible for patenting.

Accordingly, Amlogic's motion to dismiss must be, and is, denied.

Under these circumstances, Future Link agreed in its checklist letter that denial of Amlogic's motion should be without prejudice.[37] . . .

Therefore, and I agree with that, Amlogic may bring another motion raising its 101 arguments, but it cannot do so until the case dispositive motion [stage] of this case after full discovery and, of course, it may only do so, as with any motion, if at that point Amlogic believes it has a good-faith basis to pursue that motion.

So with that, let me turn finally to the third case argued today, *Consumeron v. Maplebear*.[38]

---

[36] D.I. 11 at 8.

[37] D.I. 20 at 3.

[38] MapleBear Inc. is doing business as Instacart.

In this case, Consumeron asserts four patents: U.S. Patent Nos. 8,244,594; 9,202,191; 10,115,067; and 10,628,835. The parties agree that the motion is directed to all 88 claims of these four patents. The parties disagree as to which of the 88 claims I have to analyze in order to make a decision that can apply to all 88 claims.

Instacart asks [that] all 88 claims be considered together because in its view, none raises distinct[] issues affecting eligibility. It seems to be arguing that Claim 1 of the '594 patent is therefore representative of all 88 claims. Consumeron disagrees that Claim 1 of the '594 [patent] is representative, although it is not clear how many claims Consumeron thinks I need to analyze in order to make a decision on all 88 claims.

I am not today going to resolve the representative claim issue. I'm not going to resolve much else that the parties dispute in this case . . . because I find that the defendant has failed in one of the most basic tasks required of the party moving to end a patent infringement cause of action based on Section 101. That is, the defendant must, and here did not, articulate an abstract idea that is fair to the claims being challenged.

Instacart contends that Claim 1 of the '594 patent is directed to "connecting buyers and sellers." That is an abstract idea. I'm not sure that plaintiff even disputes that that broad generalization is an abstract idea. However, in my view, this is . . . an entirely unfair characterization of what the claim or the claims [are] actually directed to. It is far too general and far too broad.

. . . Claim 1 of the '594 patent . . . when read in light of the specification, makes clear that the purported advance focuses on improving methods of shopping for and delivering goods. However, Instacart's articulation of the abstract idea does not even reference delivery, nor does Instacart's abstract idea reference buyers being able to see the products they seek to purchase in real-time. Nor does Instacart's abstract idea reference personal shoppers.

Instacart's abstract idea . . . is so broad that it seems to me it might capture an old-fashioned printed phonebook or might also capture a phone call between, for example, someone who wants to buy a car and a recorded message at a car dealer[ship] providing the hours the showroom is open. Instacart is just not being fair to the claims.

Instacart likens the claims here to those at issue in *Baggage Airline[] Guest Services Inc. v. Roadie Inc.*,[39] which found claims to be directed to non-patentable subject matter, and that decision was summarily affirmed by the Federal Circuit. And I

---

[39] *Baggage Airline Guest Servs., Inc. v. Roadie, Inc.*, 351 F. Supp. 3d 753 (D. Del.), *aff'd*, 783 F. App'x 1022 (Fed. Cir. 2019).

agree, at least, on the surface there do[] appear to be significant parallels between the claims invalidated in *Baggage Airline* and the claims asserted here.

This makes it all the more striking that Instacart, for whatever reason, chose not to model its articulation of the abstract idea on the abstract idea that [the] *Baggage Airline* [court] was persuaded by. There, the abstract idea was "coordinating and monitoring baggage delivery." By contrast, here, as I've noted . . . , Instacart's purported abstract idea [–] connecting buyers and sellers [–] does not even give the claims credit for the delivery requirement.

Mind you, I'm not saying that the *Baggage Airline* abstract idea definitely is one that would be fair to Consumeron's claims, although I'm also not saying that it is not fair to these claims. These are issues I don't have to, and will not, today decide. I just don't, however, understand why Instacart did not state the abstract idea with at least the same level of specificity as the defendant in *Baggage Airline*, which is the case that Instacart presses on me as most analogous here.

The importance of fairly stating an abstract idea to which the claims are allegedly directed is clear from many decisions of the Supreme Court and the Federal Circuit. I'll talk about just a few.

For instance, in *McRO*,[40] the Federal Circuit warned, "[c]ourts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." Further, in *Enfish*,[41] the [Federal Circuit] stressed that courts must avoid "describing the claims at . . . a high level of abstraction and untethered from the language of the claims."

Just last week in *Mentone Solutions*,[42] a case I've already referenced, the Federal Circuit reversed a 101 decision from this [C]ourt[,] faulting the formulation of the abstract idea a[t] too high level a description of the invention, noting it was one which failed to mention aspects of the invention. Accordingly, the abstract idea identified by this Court was, in the view of the Federal Circuit, "untethered to the invention as claimed."[43] And the claims, therefore, were found to be patent eligible.

. . . I recognize I did discuss with the parties potentially narrower articulations of what the claims here are fairly directed to. Perhaps they're more properly said to

---

[40] *McRO*, 837 F.3d at 1313 (internal citation and quotation marks omitted).

[41] *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016).

[42] *Mentone Sols.*, 2021 WL 5291802.

[43] *Id.* at *6.

be directed to coordinating the purchase and delivery of goods remotely and using generic computer components, or perhaps we just need to add the concepts of real-time visualization of products and GPS tracking and a mobile delivery agent system.  I'm not saying today that any of those articulations would be fair to the claims, although I'm also not saying they would not be.

[T]he point here is that the burden is very much on the defendant as the moving party to articulate in a timely manner – that is, in its opening brief [–] . . . an abstract idea that is fair to the claims.  The defendant cannot brush off this obligation by arguing after briefing and after the checklist letter that maybe it could have done a better job and insisting that the analysis would be no different had it done so.

Instead, in order to give the plaintiff a fair opportunity to respond and to attempt to preserve the property rights that it is presumed to have as a result of the issuance of a patent, and in order to give the Court a fair opportunity to understand both parties' best arguments, and prepare to resolve the parties' dispute, it is imperative that the defendant, again in a timely manner, state an abstract idea that is fair to the claims . . . .  [W]here[,] [as] here[,] the defendant has not met this obligation[,] [t]he Court is free to deny the motion on that basis alone and that is what I am doing today.

It's not the first time that I or other judges have denied 101 motions on this basis.  At an earlier 101 day in June of 2019 in a *Digi Portal v. Quotient*[44] decision, I did much the same thing.  I said there that . . . the defendant had oversimplified the abstract idea[, and the] claim [wa]s directed to more than just providing targeted information, including advertising to a user.  I went on to say there: ["]While it may be possible that [the claim at issue] could be accurately characterized as directed to some abstract idea, all I need to decide [is] that the claim [is] not directed to the abstract idea articulated by [the] defendant.["45]  I further said that the defendant's characterization there of the claim was not correct and so my denial of the defendant's motion to dismiss was without prejudice and that the defendant might have another opportunity to try to meet its burden at Step One.

Judge Hall, in a Report and Recommendation in the *CoolTVNetwork.com v. Facebook* case,[46] . . . which I adopted . . . , explained and did much the same thing. . . . Judge Hall did the same thing in *Wildcat Licensing*,[47] a . . . Report and Recommendation, which Judge Noreika of this [C]ourt adopted.

---

[44] *3G Licensing, S.A. v. HTC Corp.*, 2019 WL 2904670, at *2 (D. Del. July 5, 2019).

[45] *Id.*

[46] *CoolTVNetwork.com, Inc. v. Facebook, Inc.*, 2019 WL 4415283, at *11 (D. Del. Sept. 16, 2019), *report and recommendation adopted*, 2020 WL 1164224 (D. Del. Mar. 11, 2020).

[47] *Wildcat Licensing WI LLC v. Faurecia S.A.*, 2019 WL 7067090, at *5 (D. Del. Dec. 23, 2019), *report and recommendation adopted*, 2020 WL 95481 (D. Del. Jan. 8, 2020).

What Judge Hall wrote . . . in *Wildcat Licensing* was: "Several judges in this [d]istrict, including me, have denied a motion to dismiss under 101 when the defendant failed to adequately characterize the idea to which the claims were directed, including when the defendant oversimplified the idea of the claims in its purported abstract idea or when the defendants' purported abstract idea failed to satisfactorily capture the substance of the claims."[48]

. . . Again, that is what I have found has happened here. And I am taking the same approach and therefore denying Instacart's motion.

Given the defendant's failing at what is basically the first step or first part of Step One, I am not going to make any other decisions about Consumeron's patents today. This includes that I will not reach Step Two. So again, I'm denying Instacart's motion.

However, let me add that much of what the plaintiff has argued in its brief, and again today, does raise a great deal of skepticism as to whether some or all of the claims in the four patents-in-suit are actually directed to patentable subject matter. I have already noted the *Baggage Airline* analogy may turn out to be a very apt one.

I do not think under the totality of circumstances here that it would be proportionate to the defendant's failing to say that the Court will not consider Section 101 issues in this case again until case dispositive motions. I do not say that. And one of the circumstances on which I am relying in reaching this conclusion[,] . . . given the totality of the circumstances[,] . . . is the expert declaration submitted by the plaintiff, which I looked at but have not carefully considered because I do not believe I can consider this declaration in connection with the pending motion to dismiss. It's not incorporated in or even referenced in the operative complaint. Plaintiff evidently would like to incorporate it into an amended complaint. And if I am asked to evaluate the 101 issue again in this case, I would like to have the benefit of the substance contained in that declaration. I am not yet convinced that the declaration contradicts the intrinsic record, but I'm not making any final decision on that point. Again, I don't think that I can under the circumstances here.

The defendant may renew its argument with respect to what it contends are contradictions between the declaration, the substance of the declaration, and the intrinsic evidence if there is an amended complaint and if there is a renewed motion to dismiss. . . .

Let me note that my decisions today in *Consumeron* are without prejudice to either or both parties attempting to show that a claim or subset of claims [is]

---

[48] *Id.*

representative.  That is, I am not committing the Court to separately analyzing all 88 claims of the four patents-in-suit.  I would encourage the parties to work together to agree on a limited number of claims to be briefed and on which . . . the Court could make a decision that would apply to all 88 claims if a new motion to dismiss on 101 grounds is filed.

So for all those reasons, Instacart's motion is denied without prejudice, and Consumeron is granted leave to file an amended complaint.  In other words, both sides might be viewed as being given a second bite at the apple.

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE