IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CONSUMERON, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1147-GBW-MPT |
| | ) | |
| MAPLEBEAR INC. d/b/a INSTACART, | ) | |
| | ) | |
| Defendant. | ) | |

**INSTACART'S ANSWERING BRIEF DEMONSTRATING THE NONEXISTENCE OF ANY SEVENTH AMENDMENT RIGHT IN *ALICE*'S TWO-STEP FRAMEWORK**

OF COUNSEL:
David J. Silbert
Mark E. Strickland
Michelle Ybarra
Ryan K. Wong
JD Schneider
Christopher S. Sun
Bilal Malik
Dan Jackson
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111
(415) 391-5400

Dated: February 24, 2023

John W. Shaw (No. 3362)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant Maplebear Inc. d/b/a Instacart*

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................................1

II. ARGUMENT ....................................................................................................3

    A.    The historical test and the necessity of applying it to answer this Court's question—a necessity that Consumeron fatally disregarded. ..................................6

    B.    Here, the historical test shows—even more clearly than in *Markman*—that there is no right to have a jury answer the questions at issue. ..............................10

        1.    Applying the historical test, the answer to the first question is *No* because judges, not juries, decided patentability in the 18th century...................................................................................................10

        2.    The answer to the historical test's second question is also *No*. .................13

    C.    The Court should hold a hearing on patent ineligibility under § 101. ...................18

III. CONCLUSION....................................................................................................19

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018)........................................................................18

*Alice Corp. v. CLS Bank Int'l*,
    573 U.S. 208 (2014)............................................................................... *passim*

*Am. Airlines, Inc. v. Lockwood*,
    515 U.S. 1182 (1995)......................................................................................16

*Baltimore & Carolina Line, Inc. v. Redman*,
    295 U.S. 1182 (1935)........................................................................................6

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018)................................................................17, 18

*Berkheimer v. HP Inc.*,
    890 F.3d 1369 (Fed. Cir. 2018)................................................................17, 18

*Bilski v. Kappos*,
    561 U.S. 593 (2010)....................................................................................3, 19

*Chervon (HK) Ltd. v. One World Techs., Inc.*,
    2022 WL 14812531 (D. Del. Oct. 26, 2022) ..................................................2

*In re City of Philadelphia Litig.*,
    158 F.3d 723 (3d Cir. 1998)............................................................................2

*Diamond v. Diehr*,
    450 U.S. 175 (1981)........................................................................................17

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)......................................................................14

*Gottschalk v. Benson*,
    409 U.S. 63 (1972)..........................................................................................17

*Intell. Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016)..................................................................3, 17

*In re Lockwood*,
    50 F.3d 966 (Fed. Cir. 1995)..........................................................................16

*Markman v. Westview Instruments*,
    517 U.S. 370 (1996) ............................................................ *passim*

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) ..............................................10

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    566 U.S. 66 (2012) ........................................................ *passim*

*Merck Sharp & Dohme Corp. v. Albrecht*,
    139 S. Ct. 1668 (2019) ..........................................5, 6, 15, 18

*Miller v. Fenton*,
    474 U.S. 104 (1985) ...............................................................8

*Mortg. Grader, Inc. v. First Choice loan Servs. Inc.*,
    811 F.3d 1314 (Fed. Cir. 2016) ...........................................18

*O'Reilly v. Morse*,
    56 U.S. 62 (1853) ...................................................................4

*Parker v. Flook*,
    437 U.S. 584 (1978) .............................................................17

*Parker v. Hulme*,
    18 F. Cas. 1138 (C.C.E.D. Pa. 1849) .................................17

*Teva Pharms. v. Sandoz, Inc.*,
    574 U.S. 318 (2015) ..........................................5, 6, 15, 19

*United Carbon Co. v. Binney & Smith Co.*,
    317 U.S. 228 (1942) .............................................................15

*United States v. Wonson*,
    28 F. Cas. 745 (CC Mass. 1812) ........................................1, 6

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*,
    793 F.3d 1306 (Fed. Cir. 2015) ...........................................16

*Wood v. Underhill*,
    46 U.S. 1 (1847) .........................................................12, 16, 17

## Other Cases

*Blachford v. Preston*,
    8 T.R. 89, 101 E.R. 1282 (K.B. 1799) ........................6, 12, 13

*Crane v. Price*,
    Webs. Pat. Cas. 377 (C.P. 1842) ...............................11, 12, 16

*Egerton v. Brownlow,*
    10 Eng. Rep. 359 (H.L. 1853)................................................................6, 12

*The King v. Wheeler,*
    2 B. & Ald. 345, 106 E.R. 392 (K.B. 1819) .......................................11

*Neilson v. Harford,*
    Webs. Pat. Cas. 328 (Exch. 1841) ...............................3, 4, 11, 12

**Federal Statutes**

35 U.S.C. § 101.......................................................................... *passim*

35 U.S.C. § 102...................................................................16, 17

35 U.S.C. § 103................................................................3, 16, 17

35 U.S.C. § 112................................................................3, 16, 17

35 U.S.C. § 271..........................................................................7, 10

**Rules**

Federal Rule of Civil Procedure 12 ..................................................18, 19

Federal Rule of Civil Procedure 52 ..........................................................5

Local Rule 7.1.3 ..........................................................................1, 2

**Constitutional Provisions**

U.S. Const. Amend. VII.................................................................. *passim*

**Other Authorities**

21 Jac. I, c. 3 (1623–24), *Statutes of the Realm* vol. IV, pt. II (1819) ...........................8

H.R.Rep. No.1923, 82d Cong., 2d Sess., 6 (1952) .................................17

George Ticknor Curtis, *A Treatise on the Law of Patents for Useful Inventions,*
    (4th ed. 1873).........................................................................10

Frank H. Easterbrook, *Stability and Reliability in Judicial Decisions*, 73 Cornell
    L. Rev. 422 (1988) ...............................................................15

Bryan A. Garner et al., *The Law of Judicial Precedent* (2016) ...................................15

Fed. Cir. Bar Ass'n, *Model Patent Jury Instructions* (2020)........................................16

Mark A. Lemley, *Why Do Juries Decide If Patents Are Valid?*, 99 Va. L. Rev.
 1673 (2013) .................................................................................................................1, 10

William Butler Yeats, *The Second Coming*,
 https://www.poetryfoundation.org/poems/43290/the-second-coming ...................................14

# I. INTRODUCTION

Defendant Maplebear Inc. dba Instacart submits this answering brief pursuant to this Court's January 10, 2023 order (D.I. 190), which posed the following question: "Do the parties have the right under the Seventh Amendment to have a jury resolve a factual question that underlies the legal question of patent validity under 35 U.S.C. § 101? (For example, whether the combination of elements claimed in the patents-in-suit was conventional, routine, and well-understood at the time of the invention?)." <u>The answer is **No**</u>. That answer follows from *Markman v. Westview Instruments*, 517 U.S. 370 (1996), and from the "historical test" for determining the scope of the Seventh Amendment, which has applied since "Justice Story's day," and which the *Markman* Court both applied and prescribed for patent cases. *Id.* at 376 (citing *United States v. Wonson*, 28 F. Cas. 745, 750 (No. 16,750) (CC Mass. 1812) (Story, J.)).[1]

Consumeron never mentions the "historical test," and never cites *Markman*, even though it is the Supreme Court's "only foray into the Seventh Amendment and patent law." Mark A. Lemley, *Why Do Juries Decide If Patents Are Valid?*, 99 Va. L. Rev. 1673, 1720 (2013) (Lemley). And perhaps the full historical test is not required here—but that will ***not*** be for the reasons Consumeron seems to assume; it will be because the Court in *Markman* already reviewed the history and performed the test, and its conclusions about claim construction apply equally—indeed, *a fortiori*, as explained below—to the closely-related threshold issue of patent eligibility under § 101.[2]

---

[1] Instacart files herewith an Appendix of Unreported Opinions and Authorities. L.R. 7.1.3.

[2] Consistent with the Supreme Court's practice in *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014) and *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66 (2012), we use the terms "patent eligibility" or "ineligibility" in reference to § 101, rather than "validity" or "invalidity"—terms the Court never used in *Alice* or *Mayo*, and which are better reserved for §§ 102, 103, and 112, for reasons explained in *Mayo* and discussed below.

To justify its departure from *Markman*, Consumeron was required to carry the heavy burden of showing that its interpretation of the Seventh Amendment is "***necessary to preserve the substance of the common-law right of trial by jury***." *Markman*, 517 U.S. at 377 (emphasis in original) (quotation marks omitted).[3] The Court "cannot infer the existence of an established [jury] practice" without strong historical evidence to support it, *id.* at 381 n.5, and Consumeron failed to offer any historical evidence at all, much less the strong evidence required to conjure a Seventh Amendment right where none has been recognized before.[4]

Consumeron failed to carry its burden, and could not have carried that burden if it had tried. As explained below, the historical record makes clear that Consumeron has no right under the Seventh Amendment to have a jury resolve factual questions that might arise within *Alice*'s two-step legal framework for deciding patent eligibility under § 101.

---

[3] Unless otherwise noted (as above) emphasis in quotations has been added.

[4] The Court should not permit Consumeron to argue about the historical test—which controls the outcome here—in its reply. While litigants are generally permitted to respond to arguments in an opposition brief, the Local Rules do not permit litigants to reserve for reply arguments concerning the application of a controlling legal test established in a well-known Supreme Court decision like *Markman*. *Cf. Chervon (HK) Ltd. v. One World Techs., Inc.*, No. CV 19-1293-GBW, 2022 WL 14812531, at *2 (D. Del. Oct. 26, 2022) (noting that Local Rule 7.1.3(c)(2) "exists, in part, to prevent litigants from engaging in impermissible 'sandbagging,' reserving crucial arguments for a reply brief to which an opponent cannot respond" (citations omitted)). A full and fair opening brief should have identified and applied the controlling Supreme Court precedent described and applied in this brief, and the Court should deem waived, and should not entertain, any attempt by Consumeron to carry on reply the burden it was required to carry in its opening brief. That would unfairly deprive Instacart of the opportunity to respond. And "[u]nlike other constitutional rights, . . . an intentional relinquishment of the right [to a jury trial] is not required for waiver; the right to a jury trial can be waived by inaction or acquiescence." *In re City of Philadelphia Litig.*, 158 F.3d 723, 726 (3d Cir. 1998). To the extent the Court does consider any such arguments by Consumeron on reply, Instacart respectfully requests the opportunity to respond in a brief of any length the Court would find useful.

## II.    ARGUMENT

As already indicated, detailed historical analysis may be unnecessary here because *Markman* already provided it with regard to claim construction, which is closely related to patentability under § 101. Similar to claim construction, the *Alice* test—at both steps—requires the Court to decide what the claim is "directed to" (step one) and whether "additional elements 'transform the nature of the claim'" (step two). *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 78). These claim-construction-like questions are answered based on "precedents." *Id.* at 226 (analyzing step two); *see also Mayo*, 566 U.S. at 72, 80 ("Our conclusion [at step two] rests upon an examination of the particular claims before us in light of the Court's precedents. . . . A more detailed consideration of the controlling precedents reinforces our conclusion.").

Like claim construction, moreover, the "§ 101 patent-eligibility inquiry" is a "threshold test." *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Section 101 performs a "screening function"—"work that [§§ 102, 103, and 112] are not equipped to do." *Mayo*, 566 U.S. at 89–90. Thus, as "both the Supreme Court and [the Federal Circuit] have recognized, section 101 imposes 'a threshold test,' one that must be satisfied before a court can proceed to consider subordinate validity issues such as non-obviousness under 35 U.S.C. § 103 or adequate written description under 35 U.S.C. § 112." *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1324 (Fed. Cir. 2016).

Furthermore, the Court need not delve deep into history to see that claim construction and patent eligibility have historically been closely intertwined, as they are today. That is clear from *Neilson v. Harford*, Webs. Pat. Cas. 328 (Exch. 1841), which—although venerable, as authorities pertinent to the historical test necessarily are—is not obscure. On the contrary, it was discussed in *Markman*, 517 U.S. at 383–84, and was cited in *Mayo* for the fundamental rule that abstract ideas are unpatentable. 566 U.S. at 71. The Court in *Mayo* went on to explain that *Neilson*

addressed a "***legal problem*** very similar to the problem now before us," which the Court had "previously discussed in detail" in *O'Reilly v. Morse*, 56 U.S. 62, 114–117 (1853). *Mayo*, 566 U.S. at 82–83.

In *Neilson*, the judges took "the construction of th[e] specification upon [them]selves, as [judges] are bound to do." Webs. Pat. Cas. at 370. Having done so, "it bec[ame] necessary" for the judges—not the jury—"to examine what the nature of the invention is which the plaintiff has disclosed by this instrument." *Id.* at 370–71. The judges thus decided the question at issue here: whether the patent-in-suit was "a patent for a principle." *Id.* at 371. "[A]fter full consideration," the judges decided that the patent did "not merely claim a principle, but a machine embodying a principle, and a very valuable one." *Id.*; *see also Mayo*, 566 U.S. at 83 (quoting same). If the judges in *Neilson* had decided otherwise—as they very nearly did—they would have invalidated the patent as a matter of law. *See id.*

After examining *Neilson* and other historical authorities, the Court in *Markman* held that "the construction of a patent, including terms of art within its claim, is exclusively within the province of the court," even where evidence is presented about "disputed term[s] of art about which expert testimony is offered," "latent ambiguities," "question[s] of meaning peculiar to a trade or profession," and other issues "requiring credibility determinations, which are [normally] the jury's forte." *Id.* at 372, 386–90. Jurors' ability to make such determinations in other contexts is "much less significant than" a district court's "trained ability to evaluate the testimony in relation to the overall structure of the patent." *Id.* at 390. Thus, "there is sufficient reason to treat construction of terms of art like many other responsibilities that we cede to a judge in the normal course of trial, notwithstanding its evidentiary underpinnings." *Id.*

More recently, the Court in *Teva Pharmaceuticals v. Sandoz, Inc.*, 574 U.S. 318 (2015), while recognizing the existence of potential subsidiary factual questions, held that such questions were reserved for the trial judge, and not a jury—advisory or otherwise. In *Teva*, the Court emphasized that *Markman*'s holding that "claim construction falls 'exclusively within the province of the court,' not that of the jury," applies to "underlying factual disputes." *Id.* at 325 (quoting *Markman*, 517 U.S. at 372). "In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. These are the 'evidentiary underpinnings' of claim construction [the Court] discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal," *id.* at 332, because review of "a district court's '[f]indings of fact'" is governed by Federal Rule of Civil Procedure 52(a)(6), *id.* at 324.

Even more recently, in *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668 (2019), the Court relied on *Markman* and *Teva* to make a more general point about why judges, not juries, must decide factual disputes underlying legal issues such as "pre-emption":

> We understand that sometimes contested brute facts will prove relevant to a court's legal determination . . . [b]ut *we consider these factual questions to be subsumed within an already tightly circumscribed legal analysis*. And we do not believe that they warrant submission alone or together with the larger pre-emption question to a jury. Rather, in those contexts where we have determined that the question is "for the judge and not the jury," we have also held that *"courts may have to resolve subsidiary factual disputes" that are part and parcel of the broader legal question*.

*Id.* at 1680 (citing *Markman* and quoting *Teva*, 574 U. S. at 326–27).

As the Court held in *Alice*, "the concern that drives" the rule that laws of nature, natural phenomena, and abstract ideas are not patentable is also "one of pre-emption," albeit a different type of pre-emption: a patentee's improper pre-emption of innovation by monopolizing "these building blocks of human ingenuity." 573 U.S. at 216. That is a concern about the public interest. *See id.* And the common law has held from its ancient beginnings that a written

instrument with "a tendency injurious to the public interest or good, the law will not uphold." *Egerton v. Brownlow*, 10 Eng. Rep. 359, 437 (H.L. 1853) (Lord Truro).  That rule "is to be found enunciated in our law-books from the earliest times, and by names of the highest authority in the law, by Lord Coke (1 Inst. 206, b) [1628], by Bracton (bk. iii. fol. 100) [c. 1235]," through the year the Seventh Amendment was adopted—1791—to "Mr. Justice Lawrence in *Blachford v. Preston*, [8 T.R. 89, 93–95, 101 E.R. 1282, 1284–85 (K.B. 1799)]," and beyond.  *Id.*  "Whether the particular case comes within the rule, ***it is the province of the Court in each instance***, acting with due caution, to determine."  *Id.* at 423 (Lord Lyndhurst); *id.* at 460 (Order finding written instrument "invalid and void in law").

Thus, the answer to this Court's question—whether the Seventh Amendment requires a jury to resolve factual questions underlying the legal question of patent eligibility under § 101— is ***No***, based on a straightforward application of *Markman*, *Teva*, and *Merck* to *Alice* and *Mayo*.

### A.    The historical test and the necessity of applying it to answer this Court's question—a necessity that Consumeron fatally disregarded.

Under the Seventh Amendment, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved. . . ."  U.S. Const. amend. VII.  "Beyond all question, the common law here alluded to is not the common law of any individual state, (for it probably differs in all), but it is the common law of England, the grand reservoir of all our jurisprudence."  *Wonson*, 28 F. Cas. at 750 (Story, J.).  What is "preserved is the right which existed under the English common law when the Amendment was adopted" in 1791.  *Markman*, 517 U.S. at 376 (quoting *Baltimore & Carolina Line, Inc. v. Redman*, 295 U.S. 654, 657 (1935)).  "This is not simply a matter of constitutional originalism— a desire to be faithful to the intent of the Founders."  Lemley, *supra*, at 1677.  It is also a matter

of textualism and stare decisis—adherence to the established interpretation of the word

"preserved." *See id.*; *see also*, *e.g.*, *Markman*, 517 U.S. at 376.

> In keeping with our longstanding adherence to this 'historical test,' we ask, first, whether we are dealing with a cause of action that either was tried at law at the time of the founding or is at least analogous to one that was. If the action in question belongs in the law category, we then ask whether the particular trial decision must fall to the jury in order to preserve the substance of the common-law right as it existed in 1791. As to the first issue, . . . we compare the statutory action to 18th-century actions . . . [and ask whether those] predecessors were [tried to a jury. . . . As to the second issue, t]he Court has repeatedly said that the answer . . . must depend on whether the jury must shoulder this responsibility *as necessary to preserve the substance of the common-law right of trial by jury.* **Only those incidents which are regarded as fundamental, as inherent in and of the essence of the system of trial by jury, [require a jury under the Seventh Amendment]**.

517 U.S. at 376–78 (first emphasis in original) (citations and quotation marks omitted).

The Court in *Markman* answered the first question affirmatively (and briefly) with regard to causes of action for ***infringement*** under 35 U.S.C. § 271—but ***not as to patent eligibility*** under § 101 (or invalidity under other sections). *See id.* at 374, 377; *see also* § II.B.1, *infra*; Lemley, *supra*, at 1720–21. The Court quickly moved on to "the second question, whether a particular issue occurring within a jury trial ([t]here the construction of a patent claim) is itself necessarily a jury issue, the guarantee being essential to preserve the right to a jury's resolution of the ultimate dispute." 517 U.S. at 377. The Court's answer was ***No***. *See id.* at 377–91.

In determining the "substance of the common-law right," the Court has sometimes referred to substance versus procedure and questions of fact versus law. *Id.* at 378. "But the sounder course" is to use the "historical method." *Id.* "Where there is no exact antecedent, the best hope lies in comparing the modern practice to earlier ones whose allocation to court or jury we do know, seeking the best analogy we can draw between an old and the new." *Id.*

Comparing modern claim construction to its "closest 18th-century analogue," the Court found that there was "no established jury practice sufficient to support an argument by analogy that today's construction of a claim should be a guaranteed jury issue." *Id.* at 379–80. The

absence of juries "should not surprise us" because "juries were still new to the field" at the end of the 18th century. *Id.* at 380. But that fact itself is remarkable given that the English Statute of Monopolies had been enacted more than a century and half before. The Statute of Monopolies declared patents and other monopolies "utterlie void and of none effecte," except as determined "by and accordinge to the Comon Lawes of this Realme," and except for patents with terms of "fowerteene yeares or under, hereafter to be made of the sole working or makinge of any manner of new Manufactures within this Realme. . . ." 21 Jac. I, c. 3 (1623–24), in *Statutes of the Realm* vol. IV, pt. II, at 1212–13 (1819).

Markman (the patentee)'s purported evidence of juries interpreting patents consisted of "ambiguous references," from which "we cannot infer the existence of an established practice, especially when, as here, the inference is undermined by evidence that judges, rather than jurors, ordinarily construed written documents at the time." 517 U.S. at 381 n.5.

> There is no more reason to infer that juries supplied plenary interpretation of written instruments in patent litigation than in other cases implicating the meaning of documentary terms, and ***we do know that in other kinds of cases during this period judges, not juries, ordinarily construed written documents***. The probability that the judges were doing the same thing in the patent litigation of the time is confirmed by the fact that as soon as the English reports did begin to describe the construction of patent documents, they show the judges construing the terms of the specifications.

517 U.S. at 381–82 (footnote omitted).

The Court also considered whether, "as a matter of the sound administration of justice, one judicial actor is better positioned than another to decide the issue in question." 517 U.S. at 388 (quoting *Miller v. Fenton*, 474 U.S. 104, 114 (1985)). The Court concluded that "judges, not juries, are the better suited to find the acquired meaning of patent terms," even where there are "disputed terms of art about which expert testimony" and other evidence is offered; there are "latent ambiguities" or "question[s] of meaning peculiar to a trade or profession," and "credibility judgments have to be made." *Id.* at 372, 386–90. "The construction of written

instruments is one of those things that judges often do and are likely to do better than jurors unburdened by training in exegesis." *Id.* "[A]ny credibility determinations will be subsumed within the necessarily sophisticated analysis of the whole document, required by the standard construction rule that a term can be defined only in a way that comports with the instrument as a whole." *Id.* at 389. Accordingly, the Court held that "there is sufficient reason to treat construction of terms of art like many other responsibilities that we cede to a judge in the normal course of trial, notwithstanding its evidentiary underpinnings." *Id.* at 390.

Finally, "the importance of uniformity in the treatment of a given patent [w]as an independent reason to allocate all issues of construction to the court." *Id.*

> Otherwise, a zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims would discourage invention only a little less than unequivocal foreclosure of the field, and the public would be deprived of rights supposed to belong to it, without being clearly told what it is that limits these rights. It was just for the sake of such desirable uniformity that Congress created the Court of Appeals for the Federal Circuit. . . . ***Uniformity would, however, be ill served by submitting issues of document construction to juries***.

*Id.* at 390–91 (citations, quotation marks, and brackets omitted).

Accordingly, *Markman* held that "the construction of a patent, including terms of art within its claim, is exclusively within the province of the court," even where "expert testimony is offered" about an ambiguous or "disputed term of art," requiring "credibility determinations" and other findings about "evidentiary underpinnings." *Id*. at 372, 389–90. A similar analysis here compels a similar conclusion: the Seventh Amendment does not require a jury to resolve factual questions that might underlie the legal question of patent eligibility under § 101.

**B.	Here, the historical test shows—even more clearly than in *Markman*—that there is no right to have a jury answer the questions at issue.**

**1.	Applying the historical test, the answer to the first question is *No* because judges, not juries, decided patentability in the 18th century.**

Here, the answer to the first question in the historical test—whether the statutory action at issue is analogous to a cause of action that was tried at law to a jury in 1791—is ***No***.  The Court in *Markman* held that infringement actions under 35 U.S.C. § 271 are analogous to actions at law tried to juries in the 18th century, but the Court did not consider patent eligibility under § 101 (or, for that matter, patent invalidity under other sections).  *See* 517 U.S. at 374, 377.  Whatever might be said for invalidity under §§ 102, 103, and 112,[5] "English ***judges***" decided patent eligibility.  George Ticknor Curtis, *A Treatise on the Law of Patents for Useful Inventions*, § 3 at 2 (4th Ed. 1873) (Curtis); *see also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–78 (Fed. Cir. 1995) (relying on Curtis).

> [T]he English government had for a long time no other guide by which to distinguish the proper subjects of patents, which the crown could lawfully grant, excepting the description in the proviso of the Statute of Monopolies [regarding "new manufactures"].  Accordingly, the English system of patents for inventions has grown up under the constructions given to the term "manufactures."  Taking into view the clear policy intended by the proviso . . ., ***the English judges had to consider what could be regarded as falling within the meaning of the term "new manufactures."***  The term itself, as well as the purpose of the statute, evidently contemplated something to be done or produced in matter, ***as distinguished from a philosophical or abstract principle***.  The subjects of patents which could be lawfully granted were to be "new manufactures," or "the working or making of new manufactures," invented by the grantee, and which "others," at the time of the grant, "did not use."  Hence, it was apparent that something of a corporeal nature, something to be made, or at least the process of making something, or of producing some effect or result in matter, or the practical employment of art or skill, ***and not theoretical conceptions or abstract ideas***, must constitute the subjects of the

---

[5] Professor Mark Lemley has convincingly argued that, generally speaking, invalidity was not decided by juries under the common law.  *Lemley*, *supra*, at 1674–1736.  But it is unnecessary to answer the question here so broadly.  Consumeron's contention that it has a Seventh Amendment right is defeated by its failure to produce any evidence that such a right existed in 1791, and is further disproved by the authorities discussed in this brief, which abundantly show that juries did not decide patent eligibility or analogous questions before, in, or after 1791.

exclusive privileges which the crown was authorized to grant.

Curtis, *supra*, § 3 at 2 (citing *The King v. Wheeler*, 2 B. & Ald. 345, 349–50, 106 E.R. 392, 394–95 (K.B. 1819)). That description of the development of English common law is remarkably similar to the discussion in *Alice*, where the Court noted that the rule against claiming abstract ideas is "implicit" in § 101, and that the concern underlying that rule is fundamentally "one of pre-emption"—*i.e.*, monopolization. *Alice*, 573 U.S. at 216 (citation omitted).

In *Wheeler*, cited by Curtis, *supra*, at 2 n.1, the cause of action was tried before Chief Justice Abbot, who, "upon reading the patent and specification," found that the proviso regarding new manufactures "had not been complied with; and this question arising upon written instruments, and being, therefore, properly a question of law, [he] directed the jury to find a verdict for the Crown upon that issue, which was accordingly done." 106 E.R. at 394. The patentee then moved "for a rule to shew cause why the verdict should not be set aside, and a new trial granted." *Id.* On that motion, the patentee had "a right to assume, for the present, that the novelty and utility of his invention might have been established by proof; and the question before the Court [was] precisely the same as that which [Justice Abbott already] determined . . . and depends entirely upon the construction and effect of the written instruments, viz. the patent and specification." *Id.* The court held that "no merely philosophical or abstract principle can answer to the word manufactures." *Id.* at 394–95. The Court went on "to apply these general principles to the patent and specification," finding that the direction to the jury to find a verdict for the Crown "was right, and consequently" denied the motion for a new trial. *Id.* at 395–96.

Similarly, the court in *Crane v. Price*, Webs. Pat. Cas. 392 (C.P. 1842) stopped a jury trial in its tracks when counsel for the defendants argued that the plaintiff was attempting to preempt the use of knowledge that "the whole public have just as much right to use," and that the "plaintiff has done nothing but apply Neilson's patent to known articles, by known means, to

effect a known object." *Id.* at 392–393.[6] Chief Justice Tindal interrupted to ask: "***Is it any thing but a question of law at the last?***" and then answered his own question: "***I think it is not. . . . I do not see any thing to leave to the jury.***" *Id.* Accordingly, the court decided for itself "whether the invention of the plaintiff is a manufacture within the intent and meaning of the statute of James; that is, ***whether it is or is not the subject-matter of a patent***." *Id.* at 408; *see also Wood v. Underhill*, 46 U.S. 1, 6 n.2 (1847) ("The question whether the invention disclosed by the specification is a proper subject for a patent, is a question of law.") (citing *Crane*, Webs. Pat. Cas. at 408).

Furthermore, as already discussed above, *Egerton* provides powerful evidence that juries in 18th century England would not have decided whether patents were patent eligible because they had never decided analogous questions about whether written instruments were contrary to public policy. *See Egerton*, 10 Eng. Rep. 359–60, 421–60; *see also, e.g.*, *Alice*, 573 U.S. at 216 ("We have described the concern that drives [the rule that abstract ideas are not patent-eligible] as one of pre-emption." (citing cases)). As *Markman* makes clear, the historical test appropriately encompasses evidence about whether juries were asked to decide analogous questions about other "written documents at the time." *Markman*, 517 U.S. at 381 n.5.

Although *Egerton* was decided in 1853, it discusses authorities stretching from the "earliest times" to 1799 and beyond, thus encompassing the time of the Seventh Amendment's adoption in 1791. *See* 10 Eng. Rep. at 437 (Lord Truro) (citing authorities from Bracton (c. 1235) to Coke (1628) to *Blachford*, 8 T.R. 89, 101 E.R. 1282 (K.B. 1799)). Thus, it has always

---

[6] As already discussed, the court in *Neilson* held that whether a patent "merely claim[s] a principle" is for the court to decide based on the construction of the written instruments. *Neilson*, Webs. Pat. Cas. at 370–71.

been "a well-established rule of law that a condition against the public good, or public policy, as it is usually called, is illegal and void," and "[w]hether the particular case comes within the rule, it is the province of the Court in each instance, acting with due caution, to determine." *Id.* at 423 (Lord Lyndhurst); *see also id.* at 454 (Lord St. Leonards) ("Let each case be decided upon principle, let each case as it arises be subjected to the consideration of the Judges, and you will find in that way . . . that a clear rule of law will be formed."); *Blachford*, 101 E.R. at 1284 (K.B. 1799) (Ashhurst, J.) ("It is a clear rule of law that no right of action can spring out of an illegal contract. This contract is illegal, as being against the principles of public policy, and therefore . . . the plaintiffs cannot recover upon it.").

Thus, comparing patent-eligibility actions under § 101 to 18th-century antecedents of such an action demonstrates that there was no "right of trial by jury [to] be preserved." U.S. Const. amend. VII; *see also Markman*, 517 U.S. at 376–77. This, by itself, compels the conclusion that the answer to the Court's question is ***No***.

### 2. The answer to the historical test's second question is also ***No***.

If the Court proceeds to the historical test's second question—whether finding a Seventh Amendment right here is ***necessary***, ***fundamental***, and ***essential*** to the system of trial by jury—the answer to that question, and hence to this Court's question, is also ***No***. The issue of whether the patents-in-suit are ineligible because they claim abstract ideas need not "fall to the jury in order to preserve the substance of the common-law right as it existed in 1791." *Markman*, 517 U.S. at 376. That issue, and any subsidiary factual issues that underlie it, cannot be "regarded as fundamental, as inherent in and of the essence of the system of trial by jury." *Id.* at 377.

As in *Markman*, the sound administration of justice also counsels a negative answer to this Court's question because it is this Court, not the jury, that is "better suited" to decide questions arising under § 101, including subsidiary fact questions—in particular, the questions

raised by *Alice*'s two-step legal framework. Indeed, this Court already held at the hearing on Instacart's motion to dismiss, and reiterated in its claim-construction order, that "the claims asserted were 'directed to [the] abstract idea . . . [ of] 'using computing devices to exchange information to facilitate the acquisition and delivery of goods via personal shoppers.'" D.I. 200 at 1 (quoting D.I. 54 at 59:14-21). In other words, the Court has already taken the first step in the *Alice* framework. *See id.*; *Alice*, 573 U.S. at 218–21. The Court went on to hold that there was a factual dispute sufficient to overcome the motion to dismiss—but ***not*** summary judgment (*see* footnote 8, *infra*)—as to *Alice*'s second step: "whether the claims contain an element, elements or an ordered combination that insures the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." D.I. 200 at 2 (quoting D.I. 54 at 66:20–67:15). It would be an odd division of labor, to say the least, for this Court to decide step one yet ask the jury to decide step two, or factual issues underlying that step. The two inquiries are closely intertwined. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1352–53 (Fed. Cir. 2016) ("[T]he two stages [of the *Alice* test] are plainly related: not only do many of our opinions make clear that the two stages involve overlapping scrutiny of the content of the claims, but we have noted that there can be close questions about when the inquiry should proceed from the first stage to the second.") (citations omitted). If the two steps were artificially separated, the Court's feet would stand firm on the first step, whereas the jurors would struggle to find their footing on the second step. To paraphrase Yeats, that hybrid creature would surely be slouching toward uncertainty, which the *Markman* Court sought to avoid in circumscribing the scope of the Seventh Amendment in patent cases. *See Markman*, 517 U.S. at 390–91; *cf.* William Butler Yeats, *The Second Coming*, https://www.poetryfoundation.org/poems/43290/the-second-coming.

As the Supreme Court made clear in *Merck*, following *Markman* and *Teva*, any factual

questions arising on step two are "subsumed within an already tightly circumscribed legal

analysis," making them appropriate for the Court to resolve as part of the broader legal question,

and *in*appropriate for the jury—advisory or otherwise—to decide. *Merck*, 139 S. Ct. at 1680.

Specifically, the analysis is circumscribed by ***precedent***, on which the Supreme Court and the

Federal Circuit have always relied in answering step-two questions. *See*, *e.g.*, *Alice*, 573 U.S. at

221–27; *Mayo*, 566 U.S. at 72, 80 ("Our conclusion rests upon an examination of the particular

claims before us in light of the Court's precedents. . . . A more detailed consideration of the

controlling precedents reinforces our conclusion."). ***That is the work of a judge, not a jury***.

Judicial reliance on precedent promotes uniformity and predictability, rather than fostering the

"zone of uncertainty" that juries' more opaque decision-making process entails. *Markman*, 517

U.S. at 390–91 (quoting *United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 236 (1942)).

Assigning judges, rather than juries, the task of deciding legal questions and subsidiary

factual questions, based on precedent, "'allows each judge to build on the wisdom of others,'"

and "allows for a greater degree of fine-tuning and refinement—and constant improvement,"

while also providing "efficiency benefits" and serving "notice and reliance interests." Bryan A.

Garner et al., *The Law of Judicial Precedent* 9–11 (2016) (quoting Frank H. Easterbrook,

*Stability and Reliability in Judicial Decisions*, 73 Cornell L. Rev. 422, 422–23 (1988)). Those

are fundamental virtues of the common law itself. *See id.* Furthermore, relying on precedent,

rather than on juries, is precisely how the Supreme Court decided *Alice* and its predecessors, as

already discussed. *See*, *e.g.*, *Alice*, 573 U.S. at 221–27; *Mayo,* 566 U.S. at 72, 80.

Speaking of precedent, an unbroken line of cases from 1847 to the present establishes

beyond any doubt that "[t]he question whether the invention disclosed by the specification is a

proper subject for a patent, is a question of law." *Wood*, 46 U.S. at 6 n.2 (*citing*, *e.g.*, *Crane*, Webs. Pat. Cas. at 408). Consumeron cites *Wood* for the proposition that the sufficiency of the specification's description is "a question of fact to be determined by the jury," D.I. 210 at 2, but that is not the issue here. Most of Consumeron's other cases are inapposite for the same reason: they do not involve § 101 but, instead, novelty/anticipation (§ 102), obviousness (§ 103), or written description and enablement (§ 112). *See* D.I. 210 at 3–9 and cases cited.[7]

Like Consumeron, the Government in *Mayo* tried to improperly conflate patent eligibility under § 101 with invalidity on other grounds, arguing that "other statutory provisions—those that insist that a claimed process be novel, 35 U.S.C. § 102, that it not be obvious in light of prior art, § 103, and that it be 'full[y], clear[ly], concise[ly], and exact[ly]' described, § 112—can perform th[e] screening function" of § 101's patent-eligibility requirement. 566 U.S. at 89. "This approach, however, would make the 'law of nature' exception to § 101 patentability a dead letter. The approach is therefore not consistent with prior law. The relevant cases rest their holdings

---

[7] The few cases Consumeron cites that involved § 101, mostly unpublished documents attached to a declaration, are also inapposite. None of those cases provided any meaningful analysis of the Seventh Amendment, much less the detailed historical analysis required by *Markman*. They are the scattered exceptions that prove the rule; indeed, the absence of any established practice of juries deciding patent eligibility under § 101 is shown by the absence of any established jury instructions on the topic. *See*, *e.g.*, Fed. Cir. Bar Ass'n, *Model Patent Jury Instructions* (2020).

Consumeron also relies on *In re Lockwood*, 50 F.3d 966 (Fed. Cir. 1995), but it was vacated by the Supreme Court in *Am. Airlines, Inc. v. Lockwood*, 515 U.S. 1182 (1995). And it was vacated because the patentee, seeing the writing on the wall after the grant of certiorari, 515 U.S. 1121, withdrew his jury demand and moved to dismiss the case as moot. 1995 WL 848568. The Supreme Court remanded the case to the district court to proceed without a jury. *See id.*; 515 U.S. 1182. The district court then held that the patents were invalid and not infringed, 877 F. Supp. 500, 834 F. Supp. 1246, and the Federal Circuit affirmed, 107 F.3d 1565 (Fed. Cir. 1997).

Finally, *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306 (Fed. Cir. 2015) does not help Consumeron. To the contrary, the court there held that "the PTAB acted within the scope of its authority delineated by Congress in permitting a § 101 challenge." *Id.* at 1330. But if § 101 challenges were subject to the Seventh Amendment, both the PTAB and Congress would have exceeded their constitutional authority. Consumeron's argument proves far too much, and thus proves nothing at all. *See* Lemley, *supra*, at 1733–34 (discussing the drastic implications of "taking seriously the idea of a Seventh Amendment right to decide all validity questions").

upon § 101, not later sections." *Id.* (citing *Bilski*; *Diamond v. Diehr*, 450 U.S. 175 (1981); *Parker v. Flook*, 437 U.S. 584 (1978); *Gottschalk v. Benson*, 409 U.S. 63 (1972); and H.R.Rep. No.1923, 82d Cong., 2d Sess., 6 (1952) ("A person may have 'invented' a machine or a manufacture, which may include anything under the sun that is made by man, **but it is not necessarily patentable under section 101** unless the conditions of the title are fulfilled." (emphasis in *Mayo*)). The *Mayo* Court recognized that "the § 101 patent-eligibility inquiry and, say, the § 102 novelty inquiry might sometimes overlap. But that need not always be so. And to shift the patent-eligibility inquiry entirely to these later sections risks creating significantly greater legal uncertainty, while assuming that those sections can do work that they are not equipped to do." *Id.* at 90; *see also*, *e.g.*, *Intell. Ventures*, 838 F.3d at 1324 ("As both the Supreme Court and [the Federal Circuit] have recognized, section 101 imposes 'a threshold test,' one that must be satisfied before a court can proceed to consider subordinate validity issues such as non-obviousness under 35 U.S.C. § 103 or adequate written description under 35 U.S.C. § 112.") (citation omitted) (quoting *Bilski*, 561 U.S. at 602).

Two years after *Wood* was decided, the court in *Parker v. Hulme*, 18 F. Cas. 1138 (C.C.E.D. Pa. 1849) instructed the jury, "not without being aware that the question is one of possible difficulty, that [the patent claimed] a valid subject of claim, and properly to be secured by letters patent," noting that the "views which lead to this instruction are too elaborate and metaphysical, perhaps, to find a place properly in a charge at bar." *Id.* at 1141. And cases ever since have uniformly held that "[p]atent eligibility under § 101 is an issue of law. . . ." *E.g.*, *Intell. Ventures*, 838 F.3d at 1312.

Consumeron relies on *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018), *reh'g en banc denied*, 890 F.3d 1369 (Fed. Cir. 2018), but that reliance is misplaced. The *Berkheimer*

panel held that summary judgment was improper because the specification raised factual questions that were unresolved on summary judgment. *See* 881 F.3d at 1370. In the per curiam opinion denying rehearing en banc, the court stated that the *Berkheimer* panel opinion and *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018) "stand for the unremarkable proposition that whether a claim element or combination of elements would have been well-understood, routine, and conventional to a skilled artisan in the relevant field at a particular point in time is a question of fact," and "leave untouched" the myriad cases that "have held claims ineligible because the only alleged 'inventive concept' is the abstract idea." *Berkheimer*, 890 F.3d at 1370, 1374. By the same token, *Berkheimer* leaves untouched the fact that "none of [the Federal Circuit's] decisions support the proposition that a jury should decide whether a patent includes an inventive concept sufficient to survive *Alice* step two." *Id.* at 1380 (Reyna, J., dissenting from denial of rehearing en banc).

For all of the foregoing reasons, the answer to the Court's question is *No*: there is no Seventh Amendment right to have a jury answer factual questions that may underlie the legal question posed by *Alice*'s second step. Any such questions are "subsumed within an already tightly circumscribed legal analysis." *Merck*, 139 S. Ct. at 1680.

### C. The Court should hold a hearing on patent ineligibility under § 101.

For the foregoing reasons, Instacart respectfully requests that the Court set this matter for a hearing on § 101. Instacart believes that, with access to a full record, and without being constrained to accept as true the strained allegations in Consumeron's complaint—which were specifically designed to overcome a Rule 12 motion—the Court will conclude that there are no material issues of fact, and Consumeron's patents are ineligible under § 101 as a matter of law. *See Mortg. Grader, Inc. v. First Choice loan Servs. Inc.*, 811 F.3d 1314, 1325-26 (Fed. Cir. 2016) (affirming grant of summary judgment under § 101 and noting that "[t]he mere existence

18

in the record of dueling expert testimony does not necessarily raise a genuine issue of material fact.").[8]  But if the Court concludes that any factual disputes exist, it can and should resolve those issues itself as part of its ruling on the broader legal question of patent eligibility.  *See Teva*, 574 U.S. at 332 (observing that, where "subsidiary facts are in dispute, courts will need to make subsidiary factual findings," which will be "reviewed for clear error on appeal.")  Setting such a hearing on the "threshold test" of "§ 101 patent-eligibility," *Bilski*, 561 U.S. at 602, is the most efficient course in this case because it may obviate any further proceedings.

## III.    CONCLUSION

Accordingly, this Court should hold that there is no Seventh Amendment right to have a jury answer factual questions underlying the *Alice* step-two analysis.  The Court should also schedule a hearing to decide the legal question posed by *Alice*'s second step, as well as any subsidiary factual issues.

---

[8] Nothing in Judge Stark's ruling denying Instacart's Rule 12 motion suggests otherwise.  To the contrary, Judge Stark made clear that he "***reached this conclusion not because [he was] confident that these patents are eligible under Section 101, but because we are still at the Rule 12 stage*. . . .  *My decision today to deny this motion does not mean that my skepticism has left. The skepticism has, in fact, persisted.  And the defendant will have another opportunity to raise Section 101 challenges at the case dispositive motion stage*."  D.I. 54 at 55:1-17; *see also id.* at 76:9-19 ("it's certainly my expectation" that Instacart "will be permitted to raise a Section 101 issue again at the case dispositive motion stage").

Respectfully submitted,

/s/ John W. Shaw
OF COUNSEL:                                    John W. Shaw (No. 3362)
David J. Silbert                               Nathan R. Hoeschen (No. 6232)
Mark E. Strickland                            SHAW KELLER LLP
Michelle Ybarra                               I.M. Pei Building
Ryan K. Wong                                  1105 North Market Street, 12th Floor
JD Schneider                                  Wilmington, DE 19801
Christopher S. Sun                            (302) 298-0700
Bilal Malik                                   jshaw@shawkeller.com
Dan Jackson                                   nhoeschen@shawkeller.com
KEKER, VAN NEST & PETERS LLP                  *Attorneys for Defendant Maplebear Inc. d/b/a*
633 Battery Street                            *Instacart*
San Francisco, CA 94111
(415) 391-5400

Dated: February 24, 2023