IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CONSUMERON, LLC, a California limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> MAPLEBEAR INC. d/b/a INSTACART, a Delaware corporation, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 21-1147-GBW-MPT <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFF CONSUMERON, LLC'S REPLY IN RESPONSE TO D.I. 190
REGARDING CONSUMERON'S SEVENTH AMENDMENT RIGHT FOR
A JURY TO HEAR FACTUAL QUESTIONS UNDERLYING THE
<u>35 U.S.C. § 101 DETERMINATION</u>**

I.   **INTRODUCTION**

Following the Supreme Court precedent outlined in *Markman*, Consumeron, LLC ("Consumeron") has a Seventh Amendment right to a trial by jury on the second step of *Alice* under 35 U.S.C. § 101. This long-standing Supreme Court precedent shows that a jury decides whether an invention is well-known, conventional, or routine. *See* D.I. 210 ("Opening Br."). Aside from a few exceptions, such as instances where patent allegations were not pled in a complaint or the patent holder failed to support a prima facie case of patentability, courts have tasked juries with answering this question. Opening Br. at 2-9.

Defendant's argument that Consumeron did not provide a "historical test" misses the point. In its Opening Brief, Consumeron provided analysis comparing whether Step Two of the analysis is a factual issue for the jury, as discussed in *Berkheimer*. *Id.*; D.I. 221 ("Response Br.") at 1. Defendant provides no justification disputing that a jury should determine the numerous factual issues underpinning Step Two of the Court's §101 analysis. This type of analysis is fundamentally factual and includes none of the numerous "legal" analysis that is

part in parcel with construing claims. Tellingly, Defendant focuses on the Step One analysis which is not at issue here, and is undisputedly a legal question for the Court to answer. Defendant also points to the historical analysis in *Markman*, which concerned the interpretation of the words in a written instrument and then incorrectly applies it in the context of Step Two.

Further, Defendant mischaracterizes Consumeron's position regarding whether the jury needs to determine the entirety of Step Two. Response Br. at 13-15. However, Consumeron's position is that the jury determines just the factual issue of whether a claim element or combination of elements would have been well-understood, routine, and conventional to a skilled artisan in the relevant field at a particular point in time is at issue. *See* Opening Br. at § III. Finally, Defendant's allegations in its "First Affirmative Defense – Invalidity and/or Non-Patentability" support the Court treating § 101 similarly to other issues of validity since Defendant asserts them as a single cause of action. D.I. 66 (Answer to Am. Compl.) at 35.

## II.   ARGUMENT

### A.   The Factual Analysis Conducted At Step Two Necessitates Treating It The Same As Other Validity Issues

The abundant overlap in the factual analysis of patent eligibility and validity necessitates they be treated in the same manner by the Court. Both require determinations of the views and knowledge of skilled artisans in the relevant field and how they compare aspects of the invention to the prior art and known industry activities at the time of the invention. *See* Opening Br. at 2-9. Furthermore, *Markman* stands for the principle that determinations about the makeup of the invention be presented to the jury because they are issues of fact. *See infra* at § II(B)(i).

Patentability is more analogous to the historical determinations of validity than claim construction. *See* Opening Br. at 2-9. This is because before engaging in an obviousness or

anticipation analysis, the Court must first take the step of construing the claims for the jury. *TI Grp. Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C.*, 375 F.3d 1126, 1139 (Fed. Cir. 2004) ("Our validity analysis is a two-step procedure: The first step involves the proper interpretation of the claims. The second step involves determining whether the limitations of the claims as properly interpreted are met by the prior art."). This does not suggest a validity analysis equates to a patentability analysis and vice versa, as Defendant alleges (Response Br. at 16-17). Rather, it shows that juries have routinely engaged in similar factual determinations after the Court provides them with the proper interpretation of the claimed invention's scope. Thus, courts within this district routinely equip the jury with the information necessary to conduct its factual inquiry despite related legal questions, whether for patentability or validity. *See e.g.* Opening Br. at Ex. 2 (*TRUSTID, Inc. v. Next Caller, Inc.*, No. 18-172-LPS, D.I. 295 at 26 (D. Del. July 16, 2021) (patent eligibility jury instruction)); *see also Washburn v. Gould*, 29 F. Cas. 312, 325 (C.C.D. Mass. 1844) (the jury charge there was: "If you (the jury) should be of opinion, that the original machine is composed of parts, all of which were known before, and that Woodworth's invention was a mere aggregate or combination of those parts, to which the carriage was indispensable, you will find for the defendant.").

Defendant states that "[i]t would be an odd division of labor [] for this Court to decide step one yet ask the jury to decide step two, or factual issues underlying that step." Response Br. at 14. However, this is exactly what the Court does in nearly every validity determination at trial. The judge decides the legal question of how claims are construed and the jury decides the factual issues surrounding whether there is prior art that impacts the validity of the claims. Opening Br. at 2-4. Under Defendant's application of *Markman* and the historical test, the judge would determine virtually every issue except for infringement. This has never been the

case, and there is no need to rewrite such a long-standing precedent. *See* Opening Br. at 2-5 (citing *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 603 (Fed. Cir. 1985) ("The right to a jury trial on issues of patent validity that may arise in a suit for patent infringement is protected by the Seventh Amendment.") (citation omitted)).

Moreover, the jury is not required to determine the entirety of Step Two as Defendant suggests, just the factual question of whether the claim limitations involve more than the performance of well-understood, routine, and conventional activities. Response Br. at 14-15. Consumeron showed numerous instances where courts tasked juries with answering that question, to which Defendant had no response. Opening Br. at 7-9. Instead, Defendant avoids the issue altogether and asks the Court to hold a special hearing on §101 even after ruling on summary judgment. Response Br. at 18-19. Further, Defendant provides no legal authority supporting this requested "special hearing." *Id.*

Defendant also alleges that patentability should be separated from other validity issues despite asserting them as part of the same affirmative defense. Opening Br. at 6. But this new position cannot negate the fact that the Court has already equated §101 as an issue "related to patent validity." D.I. 190. Defendant only now sees patent eligibility and validity as separate issues without any connection. If patentability is entirely divorced from all aspects of validity as Defendant now asserts, then why did Defendant not allege it as its own affirmative defense? Before the present issue was raised by the Court, Defendant treated patentability on equal footing with §§ 102, 103, and 112. The Court here should treat patentability the same way.

    **B.**    *Markman* **Supports Step Two Analysis By A Jury**

The application of the historical test in *Markman* supports that a jury should decide the fundamentally factual issues. Only with fundamental legal issues, *e.g.*, interpreting the

meaning of words in a written instrument, should the Court decide some ancillary factual issues. *See Markman v. Westview Instruments, Inc.,* 517 U.S. 370 (1996). The historical test in *Markman* asks the following two questions. First, "whether [the Court is] dealing with a cause of action that either was tried at law at the time of the founding or is at least analogous to one that was." *Markman,* 517 U.S. at 376. The second question is "[i]f the action in question belongs in the law category, we then ask whether the particular trial decision must fall to the jury in order to preserve the substance of the common-law right as it existed in 1791." *Id*. This is the fundamental legal principle echoed in every case Defendant cited. *See generally* Response Br. Indeed, *Markman* shows why the factual identification of the invention and its comparison to others in the industry is fundamentally for the jury to determine, which is more analogous to the factual Step Two inquiry for patentability than the legal issue of claim construction.

### i. Markman Separated Legal Issues from Factual Issues

*Markman* stands for the proposition that factual issues should be determined by the jury and that Defendant must show a corollary to a legal issue if it is held for the judge. *Markman,* 517 U.S. at 376-86. *Markman* is the Supreme Court's "only foray into the Seventh Amendment and patent law" because "the issue was whether the construction of patent claims, which determines the scope of the patent, was an issue for the judge or the jury." D.I. 222 at 316. In *Markman*, claim construction was determined to be distinct from all issues considered for patent eligibility and validity as the Court considered the "simple patent case" that rests upon claim construction and infringement. *Markman,* 517 U.S. at 384.

When distinguishing the historical cases, *Bischoff v. Wethered,* 9 Wall. 812, 19 L.Ed. 829 (1870) and *Tucker v. Spalding*, 13 Wall. 453, 20 L.Ed. 515 (1871), the Court delineated a

divide between the legal construction of a patent being for the judge and the factual identification of the invention and its comparison to the industry being for the jury. *Markman,* 517 U.S. at 386. The Supreme Court goes on to describe *Bischoff* as "a case in which ***the Court drew a line between issues of document interpretation and product identification*** and held that expert ***testimony was properly presented to the jury on the latter***, ultimate issue, whether the physical objects produced by the patent were identical." *Id.* (emphasis added). *Markman* rested this analysis upon the holding in *Bischoff* that stated the factual issues of identifying the character of the invention and its differences from other inventions are not applicable in the context of claim construction.[1] *Id.* ("the Court's 'view of the case is not intended to, and does not, trench upon the doctrine that the construction of written instruments is the province of the court alone. It is not the construction of the instrument, but the character of the thing invented, which is sought in questions of identity and diversity of inventions.'") (quoting *Bischoff,* 9 Wall. at 816). Thus, *Markman* already decided that factual issues like whether an invention rests upon well-understood, conventional, or routine parts are for the jury.

ii. A *Markman* Analysis Is Analogous To Step One, Not Step Two

Under *Markman*, Step Two is a factual issue for the jury because it relates to the determination of whether the claimed invention contains an "inventive concept" sufficient to "transform [an invention for one of the judicial exceptions] into a patent-eligible application." *Berkheimer v. HP Inc.,* 881 F.3d 1360, 1367 (Fed. Cir. 2018) ("At step two, we 'consider the elements of each claim both individually and 'as an ordered combination' to determine whether

---

[1] *Markman* found that because the reasoning in *Tucker* rested expressly upon *Bischoff*, thus, the two cases are of the "same effect." *Markman*, 517 U.S. at 386.

6

the additional elements 'transform the nature of the claim' into a patent eligible application.'"). The Step Two inquiry turns not on the interpretation of a written instrument but on whether the patented invention provides something inventive to a particular industry, an analysis that is based on issues of fact that should be determined by a jury, as shown in *Berkheimer*. *Id*. at 1368-70.

Similarly, the Supreme Court divided the patentability test into two steps, each with its own distinct purpose and analysis. At Step One, the Court decides whether the "character of the claims as a whole is directed to an excluded subject matter." *Enfish, LLC v. Microsoft Corp.,* 822 F.3d 1327, 1335 (Fed. Cir. 2016). This step requires the judge to consider the terms of the claim as a whole in light of the intrinsic evidence and determine to what the claim is directed. *Id*. Thus, Step One is similar to the claim construction inquiry because the Court must interpret the scope of the claimed invention by considering the terms of the claim in light of the intrinsic evidence. This is not disputed by the parties and a moot issue here because the Court already engaged in this inquiry and made its determination. D.I. 54 (Apr. 28, 2022 Hearing Transcript) at 66-73 (denying Defendant's motion to dismiss at step two because Defendant "has not met its burden.").

However, and as the Federal Circuit explains in *Aatrix*, Step Two of the *Alice/Mayo* test is satisfied when the claim limitations "involve more than performance of `well-understood, routine, [and] conventional activities previously known to the industry.'" *Aatrix Software, Inc. v. Green Shades Software, Inc.,* 882 F.3d 1121, 1128 (Fed. Cir. 2018). This goes beyond any analysis that takes place for claim construction because "[w]hether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art, for example, does not

7

mean it was well-understood, routine, and conventional." *Berkheimer,* 881 F.3d at 1369. This type of analysis was addressed in *Markman* and distinguished from the issue of claim construction because, per *Bischoff,* identification of the claimed invention and its comparison to other inventions, extrinsic circumstances, and the state of the art is a factual determination made by the jury, who considers witness testimony and other evidence of the state of the art at the time of the invention, and then applies already construed claims. *Markman,* 517 U.S. at 386. Thus, Step Two builds upon the claim construction like analysis conducted in Step One because the jury uses the judge's interpretation of the invention's scope to determine how its components would have been perceived in the industry.

### C. Defendant's Arguments Regarding A "Historical Test" Is Without Merit

Further establishing that it is for a jury to decide whether or not an invention only claims components that were well-understood, routine, and conventional at the time of invention (Step Two) is the historical holding in *Washburn v. Gould*, 29 F. Cas. 312, 325 (C.C.D. Mass. 1844). In *Washburn,* Judge Story denied a motion for a new trial after the jury returned a verdict for the patentee. *Id.* at 329. In explaining his reasoning over the objection that "the court was bound to sate the point of law the invention claimed," he opined that he agrees that the "construction of the words of the patent and specification" are for the court to decide. *Id.* He then goes on to state the court in the present matter provided the jury with its construction and that it was then "***open to the jury to say***, what part or parts of this improved machine were new; in other words, ***what parts and combinations of parts in the same were the invention of the patentee, and what were known before***." *Id.* (emphasis added). This is because the inquiry here is "not a matter of mere law, but involved a matter of fact" and it is for the jury to decide "what upon the whole evidence connected with the patent and

specification was the extent of the plaintiff's invention. ***Did the plaintiff invent the aggregate or combination only incorporated in the machine? Or did he invent certain parts also of the machine distinguishable from the rest, which were unknown before?*** *Id.* (emphasis added).

Although this case did not specifically reference the Seventh Amendment, the very question before the parties and Court was deemed to be properly presented to the jury. Should the Court decide the historical test is needed, the most analogous historical case to the current issue is *Washburn*. The reasoning is consistent with the historical cases Consumeron cites in its Opening Brief because like validity, there is long standing precedent that factual issues extending beyond the construction of the claims goes to the jury. Opening Br. at 2-5; *TI Group Automotive,* 375 F.3d at 1139.

### III.   CONCLUSION

Consumeron respectfully requests that the Court allow the jury to determine factual issues relating to patent eligibility in accordance with its rights under the Seventh Amendment.

|  |  |
|---|---|
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
|  | By: */s/ Philip A. Rovner* |
| Paul J. Andre | Philip A. Rovner (#3215) |
| Lisa Kobialka | Jonathan A. Choa (#5319) |
| James Hannah | P.O. Box 951 |
| Christina M. Finn | Wilmington, DE 19899 |
| Sabah Khokhar | (302) 984-6000 |
| KRAMER LEVIN NAFTALIS | provner@potteranderson.com |
| & FRANKEL LLP | jchoa@potteranderson.com |
| 333 Twin Dolphin Drive, Suite 700 |  |
| Redwood Shores, CA 94065 | *Attorneys for Plaintiff* |
| (650) 752-1700 |  |

Dated: March 3, 2023
10670904